AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Information associated with Snapchat accounts C0NN0WG0NEL4TER and CONNOWGONELATER, that is stored at premises controlled by Snap Inc.

Case No.

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT A

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| | |

The application is based on these facts:

See Attached Affidavit

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

P. Andrew Gragan, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 08/23/2019

*Judge's signature*

City and state: Dayton, Ohio

Hon. Michael J. Newman, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH SNAPCHAT ACCOUNTS C0NN0WG0NEL4TER and CONNOWGONELATER, THAT IS STORED AT PREMISES CONTROLLED BY SNAP INC. | Case No. 3:19 mj 518 |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, P. Andrew Gragan, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant for information associated with Snapchat accounts C0nn0wg0nel4ter (hereinafter referred to as **ACCOUNT 1**) and Connowgonelater (hereinafter referred to as **ACCOUNT 2**) that is stored at premises, owned, maintained, controlled, or operated by Snap Inc., an electronic communications company headquartered in Santa Monica, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require Snap Inc. to disclose to the government records and other information in its possession, pertaining to the Snapchat accounts.

2. I am a Special Agent with the Federal Bureau of Investigation ("FBI"), Cincinnati Division. I have been employed as a Special Agent with the FBI since May 2016. I have received training in national-security investigations and criminal investigations, and I have conducted investigations related to international terrorism, white-collar crimes, drug trafficking,

1

public corruption, firearms, and violent crimes. As part of these investigations, I have participated in physical surveillance and records analysis, worked with informants, conducted interviews, served court orders and subpoenas, and executed search warrants.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 922(g)(3) (Possession of a firearm by an unlawful user of a controlled substance or by a person addicted to a controlled substance), 18 U.S.C. § 922(a)(6) (false statement regarding firearms), 18 U.S.C. § 924(a)(1)(A) (false statement regarding firearms), 18 U.S.C. § 1001 (false statement), and 21 U.S.C. § 844 (unlawful possession of a controlled substance), have been committed by **Conner BETTS** ("**BETTS**"). There is also probable cause to search the information described in Attachment A for evidence of these crimes, as described in Attachment B.

5. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. Specifically, the Court of the Southern District of Ohio is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

6. On or about August 4, 2019, at approximately 1:00 a.m., Dayton Police Officers responded to an active shooter in the 400 block of East Fifth Street in Dayton, Ohio. Officers observed a male, later identified as **BETTS**, actively engaged in shooting into a crowd of

individuals located at the 400 block of East Fifth Street in Dayton, Ohio, a city in the Southern District of Ohio.

7. The Officers were able to return fire towards the suspect in order to stop the threat. Multiple shots were fired, and **BETTS** was killed. At this time ten (10) people, including **BETTS**, are deceased resulting from the shooting, along with multiple individuals injured. The injured were transported to multiple local area hospitals. **BETTS** was located on the scene wearing body-armor and headphones. During a search of the suspect, a black Samsung S8 Active cellular telephone was located in his back pocket. A search warrant from the Dayton Municipal Court was obtained to search the content of this cellular telephone. The phone number (937) 956-3637 was found to be the call number assigned to the phone. Officers were able to identify the weapon as an assault rifle style firearm.

8. In the morning hours of August 4, 2019, the FBI was able to identify the shooter at the scene based on finger prints. The shooter was identified as **BETTS**.

9. On or about August 4, 2019, a Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Firearms Trace was conducted on the firearm used by **BETTS**, further described as an Anderson AM-15 5.56mm with serial number 18309695. The purchaser was **Connor Stephen BETTS**, with an address of 2250 Creekview Place, Bellbrook, Ohio, date of birth (DOB) of October 28, 1994, and a Social Security Number (SSN) with the last four digits of 6211. Ohio Bureau of Motor Vehicle (BMV) records reflect the same address, DOB, and last four digits of the SSN for **BETTS**.

10. Records obtained from a Dayton-area Federal Firearm Licensed dealer included an ATF Form 4473, which based on my training and experience I know is required in order to complete the transaction of purchasing a firearm from a licensed dealer, for an Anderson Mfg

model AM-15 receiver with serial number 18309695, which, based on information provided by ATF, was manufactured outside the state of Ohio. The transferee/buyer was listed on the ATF Form 4473 as **Connor Stephen BETTS** with the aforementioned address, DOB, and SSN. **BETTS** provided (937) 956-3637 and cnnrbetts477@gmail.com as his contact information. The transfer of the firearm from the dealer to **BETTS** was completed on April 12, 2019.

11. Box 11e of ATF Form 4473 states, "Are you an unlawful user of, or addicted to, marijuana or any depressant, stimulant, narcotic drug, or any other controlled substance? Warning: The use or possession of marijuana remains unlawful under Federal law regardless of whether it has been legalized or decriminalized for medicinal or recreational purposes in the state where you reside." The form contained warnings concerning the consequences of answering the questions on the form falsely. **BETTS'** Form 4473 was checked "No" in response to the question in box 11e.

12. Records from the same FFL dealer also showed an ATF Form 4473 for a Taurus Pt.111 G2C 9mm pistol with serial number TLR08219 was purchased by **BETTS** on November 23, 2018. The response to box 11e was checked "No."

13. On or about August 4, 2019, Dayton Police Officers executed a search warrant, issued by the Dayton Municipal Court, on a 2007 Toyota Corolla bearing Ohio license plate number GNM1586. The vehicle was parked near the scene of the shooting and is believed to have been used by **BETTS** for transportation to the scene and for storage of the weapon he used in the shooting. Ohio BMV records show **BETTS**'s father as the registered owner. Among other items, officers recovered a H&R 12 gauge Pardner Pump shotgun.

14. On or about August 4, 2019, an ATF Firearms Trace was conducted on the shotgun, further described as a Hawk Industries Inc. H&R Pardner Pump 12 gauge shotgun with

4

serial number NZ897689. The purchaser was **Connor Stephen BETTS**, with an address of 2250 Creekview Place, Bellbrook, Ohio, date of birth (DOB) of October 28, 1994, and last four of Social Security Number (SSN) 6211, identifying information consistent with the aforementioned BMV and other records.

15. Records obtained from a Dayton-area Federal Firearm Licensed (FFL) dealer included an ATF Form 4473 for a H&R Pardner 12 gauge shotgun with serial number NZ897689. The transferee/buyer listed on the ATF Form 4473 was **Connor Stephen BETTS** with the aforementioned address, DOB, and SSN. **BETTS**'s phone number on the form is the same number listed on the form mentioned in paragraph 10 above. The transfer of the firearm from the dealer to **BETTS** was completed on June 21, 2019. **BETTS's** Form 4473 was checked "No" in response to the question in box 11e.

16. On or about August 4, 2019, **BETTS**'s corpse was taken to the Montgomery County Coroner for autopsy. During the autopsy, Dayton Police Officers removed property from the pockets of **BETTS**, including an approximate three inch long black straw with a baggie attached to the end of it by a rubber band. Inside the baggie was a white powder, which the seizing officers, based on their training and experience, believe to be cocaine based on its appearance. The suspected cocaine was submitted to the Miami Valley Regional Crime Lab (MVRCL) for testing. MVRCL reported, on or about August 9, 2019, that the substance was cocaine.

17. On or about August 4, 2019, the FBI interviewed a friend of **BETTS**, who was with **BETTS** at the scene of the shooting and was shot and wounded by **BETTS**, and who for the purpose of this affidavit will be referred to as C.B. C.B. advised that around July 26 to 28, 2019, **BETTS** indicated to C.B. that he had relapsed with cocaine and it was not interacting well. C.B.

5

also stated that **BETTS** had also invited him to go the range and shoot his AR, which C.B. did not do.

18. On or about August 4, 2019, the FBI and ATF interviewed a friend of **BETTS**, who for the purpose of this affidavit will be referred to as E.K. E.K. identified **BETTS**'s Snapchat account names as **ACCOUNT 1** and **ACCOUNT 2**.

19. On or about August 4, 2019, a large national retail store, with a Federal Firearms License to deal in firearms, provided information to the FBI of weapon purchases made by **BETTS**. The weapons are further described as an H&R 1228 Pardner 12 gauge shotgun with serial number NZ682493, purchased on May 31, 2013; a DPMS Panther Arms, Inc, M4 Sportical .223-5.56 caliber rifle, with serial number L4017969, purchased on November 26, 2013; and a Mossberg 702 Plinkster 22LR rifle with serial number EML4019811, purchased on May 3, 2015. Records obtained from the retail store included ATF Form 4473s for all three firearms. Box 11e was checked "No" on all three Form 4473s.

20. On or about August 5, 2019, the FBI interviewed a high school girlfriend of **BETTS**, who for the purpose of this affidavit will be referred to as H.S. H.S. dated **BETTS** off and on in high school. She advised the FBI that **BETTS** had abused a number of drugs, including Adderall, Xanax, cocaine, and marijuana. H.S. indicated that **BETTS** purchased pills and cocaine from a manager at the restaurant **BETTS** worked at that time. H.S. advised that **BETTS** had told others he could sell cocaine to them, and that during 2013 to 2014, **BETTS** talked about having hallucinations and feeling like bugs were under his skin.

21. On or about August 5, 2019, the FBI interviewed another former, but more recent girlfriend of **BETTS**, who for the purpose of this affidavit will be referred to as C.J. C.J. knew **BETTS** since at least January 2019, having been classmates at a local college. C.J. dated

6

BETTS from at least March 2019, until they severed their relationship in or about May 2019. C.J. indicated that **BETTS** was previously addicted to methamphetamine and was a recovering meth addict. **BETTS** had told her he quit "cold turkey" after going on vacation with his family and he was unable to obtain illegal narcotics.

22. On or about August 6, 2019, a search warrant, issued by the Dayton Municipal Court, was served to Snap Inc., regarding **ACCOUNT 1**. On the same day, the company responded and provided subscriber information for **ACCOUNT 1**, including cnnrbetts477@gmail.com as the subscriber's email address, and a phone number (937) 956-3637.

23. On or about August 4 to 7, 2019, the FBI interviewed multiple individuals associated with **BETTS**. A co-worker, who for the purpose of this affidavit will be referred to as N.G., advised he was aware **BETTS** used to have a methamphetamine addiction approximately three years ago. A co-worker, who for the purpose of this affidavit will be referred to as K.G., advised that **BETTS** had told K.G. that he used to have a drug abuse problem during high school. When K.G. asked what type of drugs **BETTS** was abusing, **BETTS** mentioned huffing and cocaine. A bandmate of **BETTS**, who for the purpose of this affidavit will be referred to as J.C., advised that **BETTS** had told J.C. he used to use methamphetamine. A co-worker of **BETTS**, who for the purpose of this affidavit will be referred to as C.W., advised that **BETTS** had done methamphetamine in the past. C.W. believed **BETTS** had been clean for approximately four years. A co-worker of **BETTS**, who for the purpose of this affidavit will be referred to as A.G., believed that **BETTS** had a history of drug abuse.

24. On or about August 7, 2019, the FBI interviewed an acquaintance of **BETTS**, who for the purpose of this affidavit will be referred to as J.E. J.E. indicated that he and **BETTS** hung out at least once a month from 2014 through 2017. J.E. indicated that **BETTS** was hardly ever sober during this time and used heroin, cocaine, methamphetamine, and prescription narcotics. J.E. said that **BETTS** would often show up to his home "messed up."

25. On or about August 7, 2019, the FBI interviewed a former co-worker of **BETTS**, who for the purpose of this affidavit will be referred to as E.S. E.S. advised that on or about August 2, 2019, at approximately 4:45p.m., **BETTS** came into her place of employment and bought a beer. Before he left, **BETTS** made the comment, "I just popped a xanny, we'll see how it goes." Based on my training and experience, I know that the term "xanny" is often used as street terminology for Xanax, a controlled substance.

26. On or about August 7, 2019, the FBI interviewed an acquaintance of **BETTS**, who for the purpose of this affidavit will be referred to as J.E. J.E. advised that during the timeframe he and **BETTS** were acquainted, which was late 2018, J.E. believed **BETTS** was using various drugs, including cocaine, methamphetamine, heroin, and molly.

27. On or about August 8, 2019, the FBI again interviewed E.K. E.K. informed the FBI that he and **BETTS** had done "hard drugs," marijuana, and acid together four to five times a week during 2014 to 2015.

28. On or about August 8, 2019, E.K. was interviewed again by the FBI. E.K. acknowledged his purchase for **BETTS** of the following items used by **BETTS** in the August 4, 2019 shooting in Dayton: (1) body armor, (2) upper receiver of the AM-15 weapon, and (3) the 100-round double drum magazine. E.K. indicated that he purchased these items for **BETTS** – and stored them in E.K's apartment – to assist **BETTS** in hiding them from **BETTS**'s parents.

8

E.K. indicated that approximately 10 weeks ago while in E.K.'s apartment, E.K. watched and helped **BETTS** assemble the AR-15 weapon used by **BETTS** in the August 4, 2019 shooting in Dayton. E.K. indicated that upon arrival of the drum magazine approximately 6 to 8 weeks ago, **BETTS** retrieved the assembled weapon, including the drum magazine, and took possession of it and the body armor at that time.

29. On or about August 8, 2019, pursuant to a search warrant, issued by the Dayton Municipal Court, access was gained into the Samsung S8 Active recovered from **BETTS**'s person on or about August 4, 2019. Among the files on the phone were files that appeared to be residual emails. One email stated, "Hi c0nn0wg0nel4ter, It looks like someone logged into your account from device 'Samsung Galaxy S8 Active' on July 25, 2019 at 13:30:53 EDT. The login took place somewhere near Centerville, Ohio, United States." It was signed, "Team Snapchat." Another email stated, "Hi c0nn0wg0nel4ter, This email is to notify you that the password for the Snapchat account c0nn0wg0nel4ter has been changed. Thanks, Team Snapchat."

30. On or about August 9, 2019, the FBI interviewed a friend of **BETTS**, who for the purpose of this affidavit will be referred to as J.B. J.B. advised that **BETTS** had a very dark mind and often discussed dark sexual fantasies. J.B. said the majority of these conversations with **BETTS** were online utilizing Snapchat and a social media platform. J.B. said **BETTS** confided with him and openly spoke about the "dark" thoughts on Snapchat and the social media platform. J.B. provided **BETTS**'s Snapchat account as **ACCOUNT 1**.

31. Based on my training and experience, I am familiar with the process by which individuals purchase, obtain, possess, and sell firearms and ammunition, and how they obtain, possess, sometimes grow, and use controlled substances. I know that individuals engaged in these activities often utilize email and other online and social media platforms and websites to

9

communicate, including purchasing and planning the purchase of firearms and drugs, arranging the subsequent sale and distribution of firearms and drugs, and discussing the use thereof. I also know that individuals engaged in illegal activity often maintain multiple email and social media accounts.

## BACKGROUND RELATING TO SNAPCHAT

32. Snapchat is a messaging application provided by Snap Inc. In general, providers like Snap Inc. ask each of their subscribers to provide certain personal identifying information when registering for an account. This information can include the subscriber's full name, physical address, telephone numbers and other identifiers, e-mail addresses, and, for paying subscribers, a means and source of payment (including any credit or bank account number).

33. Providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account, and other log files that reflect usage of the account. In addition, providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the account.

34. In some cases, account users will communicate directly with a provider about issues relating to their account, such as technical problems, billing inquiries, or complaints from other users. Providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications.

## INFORMATION TO BE SEARCHED AND ITEMS TO BE SEIZED

35. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Snap Inc. to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

36. Based on the above, there is probable cause to believe that violations of 18 U.S.C. § 922(g)(3) (Possession of a firearm by an unlawful user of a controlled substance or by a person addicted to a controlled substance), 18 U.S.C. § 922(a)(6) (false statement regarding firearms), 18 U.S.C. § 924(a)(1)(A) (false statement regarding firearms), 18 U.S.C. § 1001 (false statement), and 21 U.S.C. § 844 (unlawful possession of a controlled substance), have been committed. There is also probable cause to search the information described in Attachment A for evidence of these crimes, as described in Attachment B.

37. I request that the Court issue the proposed search warrant. Because the warrant will be served on Snap Inc., which will then compile the requested records at a time convenient

to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

P. Andrew Gragan
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on August 23, 2019, in Dayton, Ohio.

HON. MICHAEL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with Snapchat account IDs **c0nn0wg0nel4ter** and **connowgonelater**, that are stored at premises owned, maintained, controlled, or operated by Snap Inc., a company headquartered at 2772 Donald Douglas Loop North, Santa Monica, CA 90405.

1

## ATTACHMENT B

### Particular Things to be Seized

I. **Information to be disclosed by Snap Inc.**

To the extent that the information described in Attachment A is within the possession, custody, or control of Snap Inc., including any messages, records, files, logs, or information that have been deleted but are still available to Snap Inc., or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Snap Inc. is required to disclose the following information to the government for each account listed in Attachment A from **September 12, 2016 to Present**:

a. All identity and contact information, including full name, e-mail address, physical address (including city, state, and zip code), date of birth, gender, hometown, occupation, and other personal identifiers;

b. All past and current usernames, account passwords, and names associated with the account;

c. The dates and times at which the account and profile were created, and the Internet Protocol ("IP") address at the time of sign-up;

d. All IP logs and other documents showing the IP address, date, and time of each login to the account;

e. All data and information associated with the profile page, including photographs, "bios," and profile backgrounds and themes;

f. All communications with other Snapchatters, such as names, the time and date of the communications, the number of messages exchanged with friends, which friends exchanged messages the most, and interactions with messages, such as when opening a message or capturing a screenshot;

1

g. All device information, including information about the hardware and software, such as the hardware model, operating system version, device memory, advertising identifiers, unique application identifiers, apps installed, unique device identifiers, browser type, language, battery level, and time zone; as well as information about wireless and mobile network connections, such as mobile phone number, service provider, and signal strength;

h. All information about the device's phonebook;

i. All location data associated with the account, including all information collected by GPS, wireless networks, cell towers, Wi-Fi access points, and other sensors, such as gyroscopes, accelerometers, and compasses;

j. All information collected by cookies and other technologies;

k. All data and information that has been deleted by the user;

l. All log information, including details on how services were used, device information, access times, pages viewed, IP addresses, identifiers associated with cookies or other technologies that may uniquely identify the device or browser;

m. All "lists" created by the account;

n. All privacy and account settings;

o. All information about connections between the account and third-party websites and applications;

p. All records pertaining to communications between Snap Inc. and any person regarding the user or the user's Snapchat account, including contacts with support services, and all records of actions taken, including suspensions of the account.

II. **Information to be seized by the government**

1. All records on the Accounts described in Attachment A that relate to violations of:

- **18 U.S.C. § 922(g)(3)**
- **18 U.S.C. § 922(a)(6)**
- **18 U.S.C. § 924(a)(1)(A)**
- **18 U.S.C. § 1001**
- **21 U.S.C. § 844**

and involve **Connor Stephen BETTS (BETTS)** since **September 12, 2016**, including:

a. Any information related to the purchase, use, or possession of firearms;

b. Any information related to the purchase, use, or sale of controlled substances;

c. Any information related to the types, amounts, and prices of controlled substances or firearms purchased, used, or trafficked as well as dates, places, and amounts of specific transactions;

d. Any information related to sources of controlled substances or firearms (including names, addresses, phone numbers, or any other identifying information);

e. Any information recording **BETTS'** schedule or travel from 2016 to the present;

f. All bank records, checks, credit card bills, account information, and other financial records;

g. Records of Internet Protocol addresses used;

h. Records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

i. Evidence indicating how and when the Snapchat account was accessed or used, to determine the chronological and geographic context of account access, use, and

  events relating to the crime under investigation and to the Snapchat account owner;

j. Evidence indicating the Snapchat account owner's state of mind as it relates to the crime under investigation;

k. The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s);

l. The identity of the person(s) who communicated with the user ID, including records that help reveal their whereabouts.

  This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.